IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

SHELLY MATLOCK,                                    )
                                                   )
                              Plaintiff,           )
                                                   )
vs.                                                )        Case Number CIV-05-612-C
                                                   )
TEXAS LIFE INSURANCE COMPANY,                      )
                                                   )
                              Defendant.           )

## MEMORANDUM OPINION

Before the Court is Defendant's Motion for Summary Judgment (Dkt. No. 20).

Plaintiff filed a Response to which Defendant filed a Reply.  This matter is now at issue.

## I.  BACKGROUND

Plaintiff's husband, Joe Matlock, purchased a life insurance policy from Defendant.

After Mr. Matlock's death, Defendant, acting within the contestability period, obtained Mr.

Matlock's medical records, determined he had incorrectly answered a question, canceled the

policy and refused to pay the death benefits.  Plaintiff filed this action alleging breach of

contract, bad faith, and intentional infliction of emotional distress ("IIED").  Defendant filed

the present motion arguing the unambiguous contract language clearly establishes that Mr.

Matlock made a material misrepresentation and therefore there was no breach of contract.

Defendant also argues that in the event the contract is found ambiguous, its denial of Mr.

Matlock's claim was premised on a legitimate dispute and therefore there is no bad faith.

Defendant argues that Plaintiff cannot establish her claim for IIED and it is entitled to

judgment on that claim.  Finally, Defendant asserts that because Plaintiff has failed to state a viable tort claim, her request for punitive damages must fail.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977).  The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e).  These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves." Celotex, 477 U.S. at 324.  Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).  All facts and reasonable inferences therefrom are construed in the

light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986).

## III.  DISCUSSION

## A.  CONTRACT CLAIM

The issue before the Court is straightforward – did Mr. Matlock make a material

misrepresentation on the application for Defendant insurance?

In pertinent part, the question at issue reads as follows:

> 13c.  Has the Proposed Insured been disabled; received treatment or care in a
> hospital or hospice or in a custodial, intermediate skilled nursing care or long-
> term care facility; received chemotherapy, radiation therapy, or dialysis
> treatment; received treatment at a hospital or rehabilitation center for alcohol
> or drug abuse within the past 6 mos.?  If "yes" give details.

(Exh. A, Defendant's Motion for Summary Judgment).   Mr. Matlock completed his

application on September 9, 2003, and answered no to question 13c.  On the basis of this

application, Defendant issued Mr. Matlock a $75,000.00 life insurance policy on March 1,

2004.  Mr. Matlock died on January 17, 2005.  Following Mr. Matlock's death, Defendant

obtained his medical records and learned he had, in fact, been to the Via Christi Oklahoma

Regional Medical Center, Ponca City, Oklahoma, on March 14, 2003, and June 12, 2003, for

CT scans.  Mr. Matlock had been to the same facility on April 18, 2003; May 30, 2003; July

2, 2003; July 18, 2003; and August 29, 2003, for blood work.  These tests were to monitor Mr.

Matlock's condition as he was recovering from cancer. Relying on these visits, Defendant

asserts Mr. Matlock received treatment or care in a hospital within the six months preceding

his application and therefore the policy was void.

Defendant argues the application was unambiguous and required Mr. Matlock to disclose his visits to Via Christi.  In response, Plaintiff argues the policy is ambiguous and no reasonable person would construe the phrase "treatment or care" to address the procedures Mr. Matlock underwent at his visits to Via Christi.  Defendant argues that when given their ordinary use in the English language, the terms "treatment" and "care" include diagnostic procedures, therapeutic procedures, or any other medical procedure.  Therefore, Defendant argues there is no ambiguity.

The Court's initial task is to determine if the phrase "received treatment or care" is ambiguous.  See Dodson v. St. Paul Ins. Co., 1991 OK 24, ¶ 12, 812 P.2d 372, 376 ("The interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly."); see also Harjo Gravel Co. v. Luke-Dick Co., 1944 OK 268, 153 P.2d 112.  In a case such as this one, where the parties ascribe two irreconcilable interpretations to the same term of an insurance contract, the Court must determine if the insurance contract is unambiguous despite the parties' conflicting interpretations:

> Oklahoma's extant jurisprudence demarcates guidelines for ascribing meaning to an insurance policy's terms.  Basically, an insurance policy is a contract.  *When its terms are unambiguous and clear*, the employed language is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions.  In this process we are mindful that an insured and insurer are free to contract for that quantum of coverage which one is willing to extend and the other is willing to purchase.  The parties are bound by the terms of their agreement and the Court will not undertake to rewrite the same nor to make for either party a better contract than the one which was executed.

4

Bituminous Cas. Corp. v. Cowen Constr. Inc., 2002 OK 34, ¶ 9, 55 P.3d 1030, 1033 (emphasis in original) (footnotes omitted). See also IDG, Inc. v. Continental Cas. Co., 275 F.3d 916, 921 n. 2 (10th Cir. 2001). "[T]he test to be applied in determining whether a word [or phrase] is ambiguous is whether the word [or phrase] 'is susceptible to two interpretations' on its face." Cranfill v. Aetna Life Ins. Co., 2002 OK 26, ¶ 7, 49 P.3d 703, 706, quoting Littlefield v. State Farm Fire & Cas. Co., 1993 OK 102, ¶ 7, 857 P.2d 65, 69. The test "is applied from the standpoint of a reasonably prudent lay person, not from that of a lawyer." Cranfill, at ¶ 8 (citing Couch on Insurance 3d § 21:14 (1995)). In reviewing a provision of an insurance contract, the Court should not use "a forced or strained construction," take "a provision out of context," or "narrowly focus[ ] on a provision," Wynn v. Avemco Ins. Co., 1998 OK 75, ¶ 17, 963 P.2d 572, 575 (citing Dodson v. St. Paul Ins. Co., 1991 OK 24, ¶ 13, 812 P.2d at 376), "'so as to import a favorable consideration to either party than that expressed in the contract.'" Crawford v. Indem. Underwriters Ins. Co., 1997 OK CIV APP 39, ¶ 6, 943 P.2d 1099, 1101 (quoting Dodson, id.). The question of whether policy language is ambiguous is a matter of law, and therefore appropriate for summary judgment determination. MIC Property & Cas. Ins. Corp. v. Int'l Ins. Co., 990 F.2d 573, 576 (10th Cir. 1993).

Following these rules of construction and viewing the policy language from the standpoint of a reasonably prudent layperson, the Court finds the policy is ambiguous as it is susceptible to two or more meanings. To the extent the definitions are related to medical issues, Webster's Third International Dictionary defines treatment as "the action or manner of treating a patient medically or surgically," p. 2435. Care is defined as "provide for or

attend to needs or perform necessary personal services," p. 338.  Neither definition clearly addresses the services received by Mr. Matlock at Via Christi.  The Court finds the phrase ambiguous for an additional reason.  Defendant argues when the nature of Mr. Matlock's visits to Via Christi is considered it is clear that those visits were for treatment and management of his condition and therefore disclosure was required.  Defendant argues that an accurate answer was required to permit proper analysis for underwriting.  However, this argument is disingenuous as it depends on the happenstance of the type of facility Mr. Matlock visited.  Had Mr. Matlock gone to the local clinic or laboratory for the CT scan or blood work, there could be no claim that he failed to disclose material facts as those visits would not have occurred in a "hospital," Defendant would have issued the policy and had no recourse.  Thus, it is only by the coincidence that Mr. Matlock, either due to convenience for himself or his doctor, or the lack of alternatives, went to the hospital for his tests that allows Defendant to attempt to avoid the policy.  Accordingly, when Defendant's stated purpose for the question is considered, the phrase "treatment or care" is ambiguous.

Because the phrase "treatment or care" is ambiguous, it must be construed against Defendant as the drafter.  See Littlefield, 1993 OK 102 at ¶ 7, 857 P.2d at 69 ("Insurance contracts are contracts of adhesion.  If susceptible of two constructions, the contract will be interpreted most favorably to the insured and against the insurance carrier.  If the contractual language is ambiguous . . . then the policy must be construed in favor of the insured.") (footnote omitted).  See also Phillips v. Estate of Greenfield, 1993 OK 110, ¶ 10, 859 P.2d 1101, 1104 ("When an insurance contract is susceptible of two meanings, i.e. if it is subject

6

to an ambiguity, the familiar rule of insurance contract interpretation applies and words of inclusion are liberally construed in favor of the insured and words of exclusion strictly construed against the insurer.").  Following this rule, a reasonable jury could find Mr. Matlock's visits to Via Christi were not for "treatment or care," and that there was no misrepresentation.  Thus, Defendant's motion on the issue will be denied.

Defendant's motion must fail for an additional reason.  Even assuming the phrase "treatment or care' was found to address Mr. Matlock's visits to Via Christi, Defendant must still establish that the undisputed material facts demonstrate that Mr. Matlock's answer to question 13c was an intentional misrepresentation.  Under Oklahoma law, the issue of misrepresentation on an insurance application is governed by 36 Okla. Stat. § 3609.  Under § 3609, a policy may be rescinded if it was issued as the result of a misrepresentation.  The Oklahoma Supreme Court defined the term "misrepresentation" in the context of this statute in Massachusetts Mut. Life Ins. Co. v. Allen, 1965 OK 203, ¶ 0, 416 P.2d 935, 936, where it is stated in the Court's syllabus:

> A "misrepresentation" in negotiations for a life insurance policy under 36 O.S. 1961, Sec. 3609, is a statement as a fact of something which is untrue, and which the insured knows or should know is untrue, or which he states positively as true without knowing it to be true, and which has a tendency to mislead, where such misrepresentation is material to the risk.

The Tenth Circuit, relying on this definition, as well as other Oklahoma Supreme Court cases, stated:  "When Massachusetts Mutual, Brunson, and Claborn are considered together, we are persuaded that section 3609 requires a finding of intent to deceive before an insurer can avoid the policy."  Hays v. Jackson Nat'l Life Ins. Co., 105 F.3d 583, 588 (10th Cir. 1997).

Defendant makes the unsupported statement that Mr. Matlock's knowledge of his visits to Via Christi and the reasons for them compels the conclusion that he intentionally failed to disclose them and therefore the policy was issued as a result of a misrepresentation.   Defendant's argument mischaracterizes the question.  The focus is not on whether Mr. Matlock was aware of his visits to Via Christi, but whether he was aware that a reasonable person would characterize those visits as "treatment or care" as those terms are used in the policy. Defendant has offered no evidence on this issue.  In contrast, Plaintiff has offered evidence which, when viewed in the light most favorable to her, demonstrates that Defendant's agent was aware of Mr. Matlock's history of cancer and his recent completion of chemotherapy, yet solicited Plaintiff and Mr. Matlock to purchase a policy, raised no question about Mr. Matlock's answer to question 13c and ultimately submitted the application without revision or comment.  Further, Plaintiff has presented the affidavit of Mr. Matlock's doctor opining that he does not consider Mr. Matlock's visits to Via Christi to be either treatment or care.  Thus, there is evidence from which a reasonable jury could find that Mr. Matlock did not intend to deceive Defendant with his answer to question 13c, and that there was no misrepresentation.  In short, whether or not Mr. Matlock made a misrepresentation on the insurance application is for the jury.  See Claborn v. Washington Nat'l Ins. Co., 1996 OK 8, ¶ 8, 910 P.2d 1046, 1049 ("Where the evidence is conflicting as to either insured's state of health at the time of application, or the falsity of insured's statements in the application process, or the intent of the insured, the issues are properly tendered to the jury for

resolution.") (citing <u>Brunson v. Mid-Western Life Ins. Co.</u>, 1976 OK 32, 547 P.2d 970; <u>Atlas Life Ins. Co. v. Eastman</u>, 1957 OK 245, 320 P.2d 397).

## B.  BAD FAITH CLAIM

Defendant argues that even if the Court finds that Plaintiff is entitled to coverage, there can be no bad faith claim.  According to Defendant, Oklahoma law gives it the right to litigate a coverage issue if its position is reasonable.  Defendant asserts that it denied Plaintiff's claim because of Mr. Matlock's material representation and at a minimum there exists a legitimate dispute on this issue and therefore there can be no bad faith claim.  Plaintiff does not dispute Defendant's position on the governing law but argues that Defendant's denial was unreasonable and, at the least, the question of whether the denial was reasonable should be submitted to the jury.

As noted above, questions remain whether Mr. Matlock's visits to Via Christi are within the scope of the phrase "treatment or care," and whether Mr. Matlock made a material misrepresentation on the application.  Thus, there are likewise questions of fact regarding whether Defendant's denial of payment was reasonable.  "A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct." <u>Oulds v. Principal Mut. Life Ins. Co.</u>, 6 F.3d at 1431, 1436 (10th Cir. 1993); <u>see also</u> <u>McCorkle v. Great Atl. Ins. Co.</u>, 1981 OK 128, ¶ 21, 637 P.2d 583, 587:

> the essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and if there is

conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

In addition, Defendant can act in bad faith if it failed to undertake a reasonable investigation into the nature of Mr. Matlock's visits to Via Christi. Oklahoma law imposes on Defendant an obligation to undertake an investigation reasonable under the circumstances before it denies Plaintiff's claim. "[W]hen presented with a claim by its insured, an insurer must conduct an investigation reasonably appropriate under the circumstances and the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." Newport v. USAA, 2000 OK 59, ¶ 10, 11 P.3d 190, 195 (citations omitted). Because Defendant has failed to provide factual support demonstrating the nature and extent of its investigation, the Court cannot evaluate the legitimacy of the dispute and therefore Defendant's motion must fail.

## C. IIED

Defendant argues that because it properly denied her claim, Plaintiff cannot present any evidence the denial was extreme, reckless, or outrageous and, therefore, her IIED claim must fail. Plaintiff's response is limited to arguing that Defendant's argument is more in the nature of a Fed. R. Civ. P. 12(b)(6) motion than a summary judgment motion.

To establish her IIED claim Plaintiff must plead and prove outrageous conduct and severe emotional distress. See Zeran v. Diamond Broad., Inc., 203 F.3d 714, 720 (10th Cir.

2000).   In considering IIED claims, the Court acts as a gatekeeper, making an initial

determination about the validity of Plaintiff's claim before sending it to the jury.

> The court, in the first instance, must determine whether the defendant's conduct
> may reasonably be regarded so extreme and outrageous as to permit recovery,
> or whether it is necessarily so.   Where, under the facts before the court,
> reasonable persons may differ, it is for the jury, subject to the control of the
> court, to determine whether the conduct in any given case has been significantly
> extreme and outrageous to result in liability.   Likewise, it is for the court to
> determine, in the first instance, whether based upon the evidence presented,
> severe emotional distress can be found.   It is for the jury to determine whether,
> on the evidence, severe emotional distress in fact existed.

Breeden v. League Servs. Corp., 1978 OK 27, ¶ 12, 575 P.2d 1374, 1377-78 (Okla. 1978)

(footnote omitted).   Even assuming Plaintiff can establish Defendant's actions were extreme

and outrageous, Defendant is entitled to judgment on this claim as Plaintiff's claim fails on

the second step.   What constitutes severe emotional distress is severely restricted.   Indeed, in

Zeran, the Tenth Circuit upheld the district court's finding of no IIED claim where the plaintiff

had suffered anxiety attacks, received threatening and abusive telephone calls, sought medical

care, and began taking a prescription drug for his anxiety.   Zeran, 203 F.3d at 721.   Courts

have repeatedly held that the suffering must be extreme or utterly intolerable in a civilized

society.   See Eddy v. Brown, 1986 OK 3, ¶ ___, 715 P.2d 74, 77 (Okla. 1986).

> [I]n order to prevent the tort of outrage from becoming a panacea for all of life's
> ills, recovery must be limited to distress that is severe.   In other words, the
> distress must be of such a character that no reasonable person could be expected
> to endure it.   Such distress is often accompanied by shock, illness, or other
> bodily harm, but bodily harm is not a prerequisite for demonstrating severe
> emotional distress.

<u>Daemi v. Church's Fried Chicken, Inc.</u>, 931 F.2d 1379, 1389 (10th Cir. 1991) (internal citations and quotations omitted). Here, neither Plaintiff's Complaint nor her response to the summary judgment motion sets out facts demonstrating the distress allegedly suffered by Plaintiff meets the severity required to support her claim. Therefore, Defendant's motion for summary judgment will be granted on this issue.

## D.  PUNITIVE DAMAGES

Defendant argues it is entitled to judgment on Plaintiff's request for punitive damages because Plaintiff's bad faith and IIED claims are without merit. Defendant argues that even if one of these claims survive, the undisputed material facts demonstrate Plaintiff cannot prove by clear and convincing evidence the elements required to obtain punitive damages.

Defendant's argument fails. As noted above, questions of fact remain on Plaintiff's bad faith claim. Thus, it cannot be said that Plaintiff cannot establish that Defendant recklessly disregarded its duty to deal fairly and act in good faith. Thus, Defendant's claim will be denied on this issue.

## IV.  CONCLUSION

As set forth more fully herein, at a minimum, questions of fact remain regarding Mr. Matlock's intent and the meaning of "treatment or care." Thus, Plaintiff's breach of contract claim survives. Likewise, questions of fact remain regarding the legitimacy of Defendant's dispute and any investigation undertaken by Defendant before the claim was denied; therefore Plaintiff's bad faith claim survives. Plaintiff has failed to plead or otherwise provide facts demonstrating any distress she suffered as a result of Defendant's conduct satisfies the

12

requirements for making an intentional infliction of emotional distress claim; accordingly, Defendant is entitled to judgment on that claim.   Finally, question of facts remain on Plaintiff's claim for punitive damages and that claim survives.

Accordingly, Defendant's Motion for Summary Judgment (Dkt. No. 20) is DENIED in part and GRANTED in part.   A separate judgment will issue at the close of these proceedings.

IT IS SO ORDERED this 14th day of December, 2005.


ROBIN J. CAUTHRON
United States District Judge